Thank you, your honor. May it please the court, counsel. This is a case about jurisdictional overreaching. Would you introduce yourself? Oh, I'm sorry. My name is Jeffrey Russell, and I obviously represent the appellant, Davis Tran, in this case. Sorry about that. As I was about to say, this is a case about jurisdictional overreaching. I submit that what happened here was the government has stretched jurisdiction beyond the breaking point. Under the government's theory, a fraud perpetrated anywhere in the world would confer federal jurisdiction as long as the proceeds were ultimately wire transferred into the United States. Yeah, that's called foreign commerce. Well, your honor, I don't think that that broader reading was intended by Congress when they used the term in foreign commerce in the wire fraud statute. And nor have I found any cases that support as broad a reading as the government submits in this case. What we have here, obviously, is the victims were foreign nationals. No question about that. The fraudulent inducement took place on foreign territory, in one case in England and the other two cases in Thailand. And the investments were supposed to be in American securities of some sort, wasn't it? That's true. That is correct. But American securities can be purchased, in my understanding, as abroad as well as in the United States. The funds were sent to San Francisco, were they not? Well, it took a rather circuitous route, your honor, in the Van Loon case. At some point, they passed through San Francisco. Ten million dollars passed through San Francisco. Well, they ultimately ended up in San Francisco. Yes, that's correct. Right. Yes. But what I'm saying is that the government's application, as applied in the facts of this case, is broader than I believe the statute was intended and is broader than any case authority that I'm aware of. And again, my main point is if the court accepts the government's theory in this case, it just seems to me that opens the floodgates to the federal courts that a fraud committed anywhere in the world would be subject to U.S. jurisdiction if the funds were ultimately to land in a banking institution in the United States. I don't believe that's what was intended, and I don't believe the case law supports that argument. We have a situation where, again, the funds were, and I want to emphasize this, the fraudulent inducement, the parting of the money, the money was surrendered by the victims in this case in a foreign nation. And as a result of representations that the jury found were obviously fraudulent in accordance with their verdict. I think we understand your argument on that point, Mr. Russell. What about the second argument that you raised for the first time in your reply brief? I'm not sure we necessarily have to entertain it, but as I understand it, you raised the sufficiency of the evidence question with respect to the purpose of executing fraud. Is that right? Well, I wouldn't say that it was a sufficiency of the evidence issue. This is, of course, in response to the government's argument in their brief. The wire fraud statute requires that the wires be used in the execution of the fraud for the purpose of executing the fraud. There was no evidence presented that, well, I shouldn't say that. There was the evidence, the facts are not in dispute here. The wires, it was transferred by wire. What I'm suggesting, what I argued in the lower court, the district court also, was that the acts of simply transferring the money into the United States were incidental acts. The causative acts, that is the defrauding of the victims, occurred in a foreign country. And it just happened that the funds were incidentally transferred in. There was no evidence that the, and the government didn't allege this, at least I don't think they did in the way the government's case was presented, or at least as the evidence was presented at the trial, that the wires were used in the execution or an integral part of the execution of the fraud. It was an incidental act. It was no different than if, in the case, had the defendant taken a check from the victims, put the check in his pocket, and got on an airplane and flown back to the United States. I cite the Kahn case, the Supreme Court case, I believe it's on page 9 of my reply brief, with regard to the mail fraud. If the check is drawn on a London bank and cashed in San Francisco, you're back to square one, aren't you? Well, I'm sorry, I don't, I didn't, could you say that again? I'm sorry, Your Honor, I didn't quite follow that. If it's drawn on a London bank and it's cashed in San Francisco, I'm back to square one. Yeah, I don't see how you can defeat liability here just because you can analogize to a check rather than a wire. Maybe I'm misunderstanding your argument. Well, I'm simply saying that the bringing of the check, in that analogy, back to the United States, is just another, it's just a means of transporting, if you will, transporting the funds. Okay. It's an incidental act. That's what I was trying to respond to the question. It's not an integral part of the execution of the wire fraud statute. I mean, in the case, many wire fraud cases, this Court is well aware, involve the telephone, where a solicitor calls somebody on the telephone and induces them to part with their money. That's a clear wire fraud situation. In that particular setting, the use of the wires were an integral part of the execution of the fraud. That's not what we have here. The fraud occurred overseas. The money, through a rather circuitous route, as I mentioned earlier, ultimately ends up in the United States. I don't believe that that alone is sufficient to confer jurisdiction. Otherwise, it seems to me that there's no limits to jurisdiction. Okay. And I think that the Supreme Court in recent years, in the context of state-federal relations, has said that there are limits to federal jurisdiction. This doesn't involve, this is a different issue regarding international relations rather than state-federal, but I think there are limitations, and I'm submitting that under the government's theory, if you look at it, they basically say there are no limitations so long as the funds end up here. All right. Why don't we hear from the government? You have two and a half minutes reserved. Thank you. Mr. Lee. Good morning. My name, if it pleases the Court, my name is Lawrence Lay. I'm an assistant United States attorney here in San Francisco, and I represent the United States in this case. Let me turn to the argument that was raised in the appellant's reply brief for the first time. He suggests that was just responsive to your argument, but what's your view? And, Your Honor, I viewed it the way you did, that it was a sufficient to the evidence of the argument, namely that the United States had not proved that, met its burden with respect to showing that the wires in this case were used in the execution of the fraud. And I have two points to make on that. One is, the defendant is just wrong on the record here. If you take the wires at issue here, and there are a number of wires, they break down into three types. One type involves proceeds coming into this country, and with respect to those, those are clearly an execution of the scheme to the fraud. Counsel makes reference to one instance where $10 million goes from London, and then it's deposited in Spain by the defendant, but also by a friend trusted by the victim, and then it's moved on to this country. That's a wiring in execution of the scheme to the fraud for a couple of reasons. For one thing, it finally transfers the proceeds to the defendant's exclusive control, and it also transfers the proceeds to a worldwide reputable institution, Chase Manhattan Bank. And we alleged in our indictment, and it's part of the record, that the defendant in this case wanted those funds in substantial banks like Chase Manhattan so he could entice other investors. The second kind of proceeds that are the second kind of wiring we have in this case that are an execution of the scheme to the fraud are the classic lulling letters, which are mostly faxes sent by the defendant abroad to his various victims, saying, we're going to do it next week, the trade is going to happen, the investment is going to occur. There's lots of case law, and we've cited some in our brief that support that. That's evidence in execution of the scheme to the fraud. And then the final group of wirings involves wirings caused by the defendant to Thailand and Bangkok for the accounts of someone who was assisting the defendant and Mr. Pong Fan in communicating with the victims in this case. And he subsequently did that. Clearly, these were payoffs to this person, rewards to this person for communicating as an intermediary on behalf of the defendant. The second point I want to make with respect to the defendant's argument on this particular issue is he's weighed that argument by raising it now in his reply brief. That's too late. The government's prejudiced here by if this is, and we believe it is, an argument on sufficiency of the evidence. We didn't have a chance to brief that, even though we think the record supports it here. And secondly, this is after the factual record has been shaped. And this was done on an agreed statement of facts where the issue was the issue of jurisdiction. So for those reasons, I urge you to reject the defendant's argument. As to jurisdiction, there are three points I want to make. I'll make them very quickly, I think. I'll just list them. First of all, the offenses in question here occurred here. And I'll explain what I mean by that. They occurred in this country. Secondly, the phrase foreign commerce does indeed express the intent of Congress to exercise jurisdiction over the offenses at issue. And finally, thirdly, the exercise of jurisdiction here is consistent with international law. Now let me turn to that first point. The offenses occurred here because each and every count of conviction, whether you're talking about an interstate transmission of stolen funds or the use of the wires, involved a wire transfer or a fax either originating in this country or ending in this country. So the offenses occurred here. And that's the gist of the offense at the federal level. We're not talking about state crime here, where it's just a simple fraud. The gist of these offenses is that in the case of wire fraud, the use of the wires. In the case of the transmission statute, it's the transmission of the stolen funds. And I refer you to the cases in our brief on that point. So the defense is just wrong when he argues that the gravamen of the crime occurred abroad. On the question of whether or not Congress has expressed its intent to exercise jurisdiction when you have flyers beginning or ending in the United States, I refer you to the phrase foreign commerce. I think the plain language there suggests that that's exactly what it's designed to apply to. And it's not designed to apply to every offense in the world. We're just talking in this case about wires terminating or originating here in the United States. And I refer you to the Hill case in our brief, where this court recently looked at the words foreign commerce and indicated these in italics in the Hill case, indicated that these words express an intent to exercise jurisdiction, expertarial jurisdiction. Finally, just the final point, I don't think this is necessary because congressional intent, in my mind, is conclusive here. But the cases also refer to the fact that courts also look at whether or not the statutes in question, the conferred jurisdiction are consistent with international law. And there are three principles of international law that suggest these offenses and these statutes are consistent with international law. The first of these is the territorial principle, which confers jurisdiction, permissible jurisdiction, where the offense occurs in the country, where that jurisdiction is based upon the place where the offense was committed. And the offenses in this case were committed in this country. The second basis of international jurisdiction is the objective territorial basis of jurisdiction, which involves conferring jurisdiction where you have an act outside the United States that causes detrimental effects inside the United States. Counsel said in his brief that, well, there are no American victims here, but the detrimental effects are those that relate, they're more intangible, but they're still real. These transactions induce stolen money to our United States capital markets. They, if allowed to go unpunished, create a safe haven in this country for criminals committing their crimes abroad. And for that reason, there is detrimental impact by what's occurring from the inducements abroad. And finally, jurisdiction is appropriate when a citizen of a country is the defendant in a criminal case and the defendant in this case was an American citizen. So for the reasons I've stated, we submit, Your Honor, the defendant's conviction and sentence ought to be affirmed. Thank you, Counsel. Mr. Russell, you have some reserved time. Thank you, Your Honor. I want to emphasize that there's a presumption against extraterritoriality. And unless the statute explicitly provides what this Court in the McCoy case called a jurisdictional hook, and I submit that simply using the phrase in foreign commerce is insufficient to provide that jurisdictional hook. If Congress had intended, as Mr. Lay suggested, that any time the monies are transferred into the United States that are obtained fraudulently from abroad, that that confers federal jurisdiction, they could have simply said so. They could have said use of the mails in any way. That's not what happened. Now, in the cases that were cited by the government in their brief and the cases that were relied on by the district court, all involved either an act committed in the United States or where there's a victim that was a United States citizen, either individually or institutionally. The Goldberg case, which is cited in my opening brief, which is one of the cases relied upon by the district court, in that particular case, it was a wire transfer from Canada to the Bahamas. No money came into the U.S., yet the Third Circuit found jurisdiction. And the simple reason was that Mr. Goldberg, the defendant, apparently a clever fellow, while he was in state prison in Pennsylvania, made a phone call to the bank in Canada transferring the funds to the Bahamas. In addition to that, the victim of that particular case was an American insurance company. So the court held that even though money has never entered the U.S., it was transferred from Canada to the Bahamas. Mr. Goldberg, the defendant, perpetrated the fraud when he made the phone call while in the United States. And secondly, there was an American victim. That's not what we have here. The frauds were not perpetrated in the United States, and there was no American victim. And finally, I just want to say that in closing, I know my time is almost out, with respect to the issue of the insufficiency of the evidence, that's not my point in trying to raise the issue. I think if you look just at the pleadings alone in the indictment, it's not pled in a way that suggests that the wires were used for the purpose of executing the scheme. Thank you, counsel. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, Beistline